FRANK D. LACKEY *v.* STATE SCHOOL TAX DEPARTMENT OF THE STATE OF DELAWARE.

(*September* 19, 1933.)

RODNEY, J., sitting.

*Hering* and *Morris* for the appellant.

*William H. Foulk* for the Tax Department.

Superior Court for New Castle County, No. 424, September Term, 1932.

RODNEY, J., delivering the opinion of the Court:

The question in this case is quite narrow.

The brief for the appellant states "the only question to be decided is a question of law, namely, whether or not it was possible, under the Delaware income tax law as it existed in 1924, to make an exchange of stock the basis of computing a taxable gain or a deductible loss. If the question is answered by the Court in the affirmative then we have no basis for relief."

I will, therefore, limit my conclusions to the chosen field, confining the consideration of an "exchange of stock" to that particular kind of exchange involved in the present litigation.

The question here involved is largely one of statutory construction and in view of the marked similarity between the language of our own statute and the Federal Income Tax Laws, especial attention must be paid to the cases in the Supreme Court of the United States construing the Federal acts and passing upon the creation of a taxable income and finally, I must consider the question of allowable deductions under our own act for in this phase of the law our own act materially differs from the Federal acts.

The Federal acts of 1913 and 1916 (*Income Tax Act*

1913, § 2 (*B*), 38 *Stat.* 167; *Income Tax* 1916, § 2 (*a*), 39 *Stat.* 757) both provide that

" * * * Net income * * * derived from * * * dealings in property, whether real or personal, growing out of the ownership or use of or interest in real or personal property, also from interest, rent, dividends," etc.

The Delaware act (32 *Del. Laws, c.* 9, *Art.* 1, § 1) provides that

" * * 'Net income' means the aggregate of all gains, profits * * * derived from * * * sales or dealings in real or personal property growing out of the ownership or use of or interest in such property, also from interest, dividends," etc.

.Under the Federal acts there have been at least five decisions of some value in the present discussion. *Eisner v. Macomber,* 252 *U. S.* 189, 40 *S. Ct.* 189, 64 *L. Ed.* 521, 9 *A. L. R.* 1570; *U. S. v. Phellis* (1921), 257 *U. S.* 156, 42 *S. Ct.* 63, 66 *L. Ed.* 180; *Rockefeller v. U. S.* (1921), 257 *U. S.* 176, 42 *S. Ct.* 68, 66 *L. Ed.* 186; *Cullinan v. Walker* (1923), 262 *U. S.* 134, 43 *S. Ct.* 495, 67 *L. Ed.* 906; *Weiss v. Stearn* (1924), 265 *U. S.* 242, 44 *S. Ct.* 490, 68 *L. Ed.* 1001, 33 *A. L. R.* 520; *Marr v. U. S.* (1925), 268 *U. S.* 536, 45 *S. Ct.* 575, 69 *L. Ed.* 1079. In each of these cases a stockholder of an existing corporation upon some change in capital structure or upon a re-organization of the company, received stock or securities of another corporate entity. In each case, the business enterprise remained the same and the securities of the new company were issued to the stockholders of the old company. In two of these cases, *Eisner v. Macomber,* and *Weiss v. Stearn,* the additional value in securities or shares of the new company were held not to be taxable until said securities or shares had been finally disposed of by the stockholder. This apparently was largely, at least, upon the theory that the identity of the two corporations had been preserved either literally or substantially. In both of these cases the transaction was considered as an exchange of certificates representing the same corporate interest and not a change of interest in itself.

In the more recent case of *Marr v. U. S.* (1925), the appellant had purchased both preferred and common stock in a New Jersey corporation for $76,400. Some years later, a new corporation was formed in Delaware and the appellant received 5 shares of common stock of the new corporation for each share of the old company held by him and one and one-third shares of new preferred stock for each old share of preferred stock. The capitalization of the old company had been thirty million dollars, fifteen millions of seven per cent. preferred stock and fifteen millions of common stock. The capitalization of the new Delaware company provided for twenty million dollars six per cent. non-voting preferred stock and eighty-two million, six hundred thousand dollars in common stock. The new shares received by the appellant had a valuation of four hundred thousand eight hundred sixty-six dollars and fifty-seven cents. The corporate structure was, as has been seen, altered with the resultant changes in the amount of preferred stock and of the dividend charges. The Court held that the difference between the value of the stock of the Delaware company and the original cost of the stock of the New Jersey company constituted taxable income holding that after the transfer the stockholders did not have the same proportional interest in essentially the same corporation.

Turning to the instant case, we find that the Simms Petroleum Company offered to the stockholders of the Woodburn Company the opportunity of exchanging the shares of the Woodburn Company for those of the Simms Company. At that time the two companies had nothing in common except presumably the general character of business transacted by each. Each had its own and different corporate structure; each its own assets and each its own liabilities. The Woodburn Company was not re-organized by the creation of the Simms Company, but each existed, and still exists, with its entity unimpaired and no change,

except that after the acceptance of the offer of the Simms Company by some of the stockholders of the Woodburn Company, the Simms Company owned certain stock of the Woodburn Company and certain former stockholders of the Woodburn Company owned stock of the Simms Company. The proportional interest of the stockholders of the Woodburn Company before the transfer bore no analogy to the value of the holding in the Simms Company after the transfer.

It is agreed that at the time of the offer by the Simms Company and the acceptance by the appellant that each share of the Simms Company had a valuation of twelve dollars and a half. If this sum had been offered in cash for each share of the Woodburn stock owned by the appellant, it would have brought him $91,250 and the difference between that figure and the cost of $70,394.40 would assuredly have been taxable. If the exchange had been upon the basis of one share of Simms Company for one share of the Woodburn Company, the figures just given would still have been applicable and upon the authority and reasoning of the cited cases, the tax would have been based upon the difference of $20,855.60. This tax would have been imposed because the taxable amount representing the "gain or profit * * * derived * * * from dealing * * * in personal property growing out of the ownership * * * of such property." Instead of acquiring the appellant's stock upon the basis of share for share, the Simms Company required the appellant to give 25 shares of the Woodburn Company for one share of the Simms Company. In this way, the appellant, in 1924, received 292 shares of the Simms Company, having at that time a valuation of $3,650 in exchange, or in consideration of the transfer of 7,300 shares of the Woodburn Company which had cost the appellant $70,394.40 and the appellant thereby suffered a loss of $66,744.40. The State Tax Department contends that this loss occurred at the time of this transfer in 1924 and was

deductible, if at all, at that time. The appellant contends that it was not deductible until the Simms stock was sold in 1925.

The deductible losses allowed under the Delaware act differ from those allowed under the Federal acts. As shown in the statement of facts, in Delaware "losses sustained in the purchase and sale or ownership of stocks  *   *   * shall be allowed only to the extent of gains or income from such transactions or ownership." The appellant contends that the transaction here involved was not a sale, but a reorganization or merger and that no loss was sustained to the "ownership" of the stock. The appellant in short, as shown by the record, contends that the transaction was not a change in substance or of ownership, but a mere "paper transaction." This can only mean that the claim is that the stockholding in the Simms Company enjoyed by the appellant after the transaction was the same proportional interest theretofore held in the Woodburn Company. As I have heretofore pointed out, this cannot be true. I do not think the transaction was a reorganization or a merger and if the loss suffered by the appellant was not attributable to a sale, then it was a loss sustained to the ownership of the Woodburn stock and deductible, if at all, in the year 1924.

The appeal is dismissed.

I have herein considered only the 292 shares of the Simms stock exchanged for the 7,300 shares of Woodburn stock. The eight additional shares of the Simms stock purchased in 1924 and subsequently sold in 1925 was upon a different footing.