RUBY R. VALE *v.* STATE SCHOOL TAX DEPARTMENT.

254

*(June 11, 1934.)*

LAYTON, C. J., and HARRINGTON, J., sitting.

*George C. Hering, Jr.,* and *Ruby R. Vale, in propria persona,* for appellant.

*William H. Foulk* for Tax Department, appellee.

Superior Court for Sussex County, No. 39, October Term, 1933.

LAYTON, C. J., delivering the opinion of the Court:

The appellant's chief contentions are these:

(1) That the tax was erroneously computed on the estimated paper profit on all the shares of Postum received by appellant in 1928, whereas the tax should have been computed only on the 900 shares actually converted into cash.

(2) That even if the transaction between the shareholders of LaFrance and Postum constituted a taxable transaction, the computation of the value of LaFrance shares as of January 1, 1920, was unfair for that, by the method of computation adopted and applied, intangible values were to a great extent ignored.

■■ The first contention rests upon the conception that the transaction between the shareholders of LaFrance and Postum was not a sale or dealing in property, but merely a reorganization or merger of the two companies by which the appellant received Postum shares in exchange for LaFrance shares resulting in the same quantum of interest

in the merged corporation as he had theretofore possessed in LaFrance, and, consequently, the shares of Postum so received by him were not taxable as gain actually received into possession, and did not become taxable except upon actual sale, and to the extent of profit or gain resulting therefrom. In support of this contention, the appellant relies upon *Weiss v. Stearn,* 265 *U. S.* 242, 44 *S. Ct.* 490, 492, 68 *L. Ed.* 1001, 33 *A. L. R.* 520, construing and applying a federal income statute in all respects substantially similar to the Delaware Statute. The facts of that case were these; the National Acme Manufacturing Company was an Ohio Corporation with a capitalization of $5,000,000.00. The owners of the entire capital stock deposited all the shares with the Trust Company. A banking firm deposited $7,500,000.00 with the same Trust Company. Both classes of depositors incorporated in Ohio the National Acme Company with $25,000,000.00 authorized capital, and powers similar to the old corporation. The new corporation purchased all the assets of the old corporation and assumed its liabilities. The Trust Company delivered to the banking firm certificates for one-half of the new stock, and to the owners of the old stock certificates for the other half, to each owner his pro rata part, together with $7,500,000.00; wherefore, the owner of each $100 of the old stock received $150 in cash and $250 of new stock representing an interest in the business one-half as large as he had before. Prior to the transaction his interest was 100/5,000,000. Thereafter it was 250/25,000,000 or 50/5,000,000. Upon this state of facts, the Court held that each stockholder became liable for the tax upon any profits which he actually realized by receiving the cash payment, but that with respect to the other aspect of the transaction, a mere change for purpose of reorganization, followed by issuance of new certificates, did not constitute gain separate from the original capital interest; that something more was necessary—something

which gave to the stockholder a thing really different from that which he had before.

Applying this test to the facts of the instant case, it is obvious that the Weiss Case is not authority for the position of the appellant. Prior to July 15, and September 4, 1928, appellant was the owner of 119.2367/13656.6731 of the property and assets of LaFrance. This was a Pennsylvania Corporation. The stock had a par value of $100, was closely held, and was without established market value. The corporation manufactured and sold laundry essentials. On September 4, 1928, the appellant by the transaction became the owner of 9220/X (the capitalization of Postum not appearing) of Postum, a Delaware Corporation, whose capital stock was of no par value, whose business was different, with different officers and directors, and whose stock was widely held and possessed a definite market value on the New York Stock Exchange. By the transaction appellant acquired a fractional interest in the property and assets of both LaFrance and Postum and it cannot be said that the appellant had the same proportional interest in essentially the same corporation. *Marr v. U. S.*, 268 *U. S.* 536, 45 *S. Ct.* 575, 69 *L. Ed.* 1079. This state of facts does not present a case of reorganization or merger whereby certificates were exchanged representing the same corporate interest, but on the contrary, there was essentially a change of interest. *Lackey v. State School Tax Department*, 5 *W. W. Harr.* (35 *Del.*) 507, 168 *A.* 194. The appellant received something essentially different from that which he theretofore had. *Weiss v. Stearn, supra.* He held and owned the stock of a company incorporated under the laws of a foreign state, not organized for the purpose of carrying on the old business, and which held no title to the original assets. The transaction necessarily must be deemed to be a sale of LaFrance to Postum, the medium of payment being Postum shares of ascertained value, and not cash. The appellant, in a legal sense, realized his gain and became taxable thereupon as

income for the year 1928. *Cullinan v. Walker*, 262 *U. S.* 134, 43 *S. Ct.* 495, 67 *L. Ed.* 906.

It is true that, by the language of a recital of the agreement, the transaction is deemed a plan of reorganization, but it is equally true that throughout the agreement the owners of LaFrance shares are denominated as "sellers"; but whatever result was hoped to be accomplished by calling the transaction a reorganization, as was said in the Weiss Case,

"Questions of taxation must be determined by viewing what was actually done, rather than the declared purpose of the participants. * * *"

See, also, *U. S. v. Phellis*, 257 *U. S.* 156, 42 *S. Ct.* 63, 66 *L. Ed.* 180.

The second contention is that $114.09 per share as found by the Commissioner was not the fair market value of LaFrance shares as of January 1, 1920. We are concerned with a closed corporation whose shares had no price established by public sales, or by sales in the way of ordinary business. The tangible assets of the corporation were small. The substantial assets consisted of secret formulas and processes, distributors' territories, tradenames and trademarks. Fair market value is a question of fact to be established by reasonable and adequate evidence. The problem is to determine, as of a past date, the fair market value of the shares in the best way possible, that is, to ascertain the price which intelligent and reasonable buyers and sellers, having due regard for their mercenary interests, would have most likely agreed. upon, recognizing facts in evidence or in reasonable contemplation.

The taxable and the Commissioner are far apart in their appraisals of value. The Commissioner, sustained by the Tax Board, applied as a test of value the capacity of the company for producing income. The average net earnings for a period of five years prior to January 1, 1920, were

capitalized at 7%, and the result, $1,558,193.30 was deter-mined to be the value of all the LaFrance shares.

The appellant strenuously urges that the method of valuation was unfair, for, by that method, intangible assets were to a great extent ignored. He concedes that the appli-cation of the formula is fair in most cases, but not, he says, in the instant case where the assets consisted almost entirely of intangibles, book value, value of distributors' territories, other territories, tradenames and trademarks.

█ █ It is true that the use of a formula for the capi-talization of earnings to determine the value of shares of stock is only one method and not an exclusive method, but the assessment of the Commissioner is prima facie correct, and the burden is upon the appellant to establish by reason-able and competent evidence error in the assessment. See *Wickwire v. Reinecke*, 275 *U. S.* 101, 48 *S. Ct.* 43, 72 *L. Ed.* 184.

The appellant contends that the value of LaFrance shares as of January 1, 1920, was $461.15, and not $114.09, and that the total value of LaFrance shares, as of that date, was in excess of $6,000,000.00. He fixes the book value of the shares at $1,856,830.11, instead of $468,345.94, the aggregate of the capital and surplus. The taxable arives at the book value in this way. He adds to the sum of $1,558,-193.30, found by the Commissioner to be the total valuation, the book value as found by the Commissioner, and then, as he contends, to prevent a duplication of goodwill, he subtracts the goodwill of the company as set up on its books as of January 1, 1920, in the sum of $169,709.13. But this valuation, it is argued, covers "ordinary goodwill and does not give any consideration to other intangibles  *  *  * peculiar to this Company." There were five distributors whose contracts were purchased by Postum in February of 1929, at a total of $531,941.53, and the taxable contends that the Commissioner in his capitalization of goodwill

placed upon them no value whatever; that these contracts were actual, separate and distinct intangible assets, not in any sense to be included in the "ordinary, technical term of goodwill," which could easily be, and should have been, capitalized at $2,000,000.00. There were seventeen other distributors to whom Postum paid nothing, as they were in default under their contracts which were subject to cancellation unless a certain volume of business was maintained; and, in addition, the company itself had territory in which it acted as its own distributor. The taxable contends that a valuation of $1,000,000.00 is conservative, by reason of the proportion of sales in these territories as compared with the sales in distributors' territories. Finally the taxable contends that additional goodwill should be added. He asserts that "goodwill, trademarks, tradenames, samples, advertising costs and all intangibles, exclusive of distributors' territories and other territories" are properly and conservatively capitalized at $3,000,000.00. Deducting from this sum the valuation of the company as determined by the Commissioner, the result is $1,441,806.70, which the taxable asserts is additional goodwill. The total of these items, or elements of value, is $6,298,636.81, which is said to be the fair value of all the shares as of January 1, 1920. The difficulty with the assertions of the taxable is that proof is lacking to sustain the valuations as he finds them to be. His argument proceeds in this wise: prior to January 1, 1920, LaFrance had established its selling territories. Its distributors were active and efficient. Its tradenames and trademarks had been well established by advertising and other sales methods. As he observes, by January 1, 1920, LaFrance had "passed through its period of adolescence and had reached its majority." Therefore, the value of LaFrance shares, upon a reasonable basis of expectation, not unduly optimistic or pessimistic, was established, and all the company had to do was to maintain normally its activities and to preserve the existing situation.

However, the facts and figures submitted by the appellant lead to the inevitable conclusion that the position of LaFrance in 1928 was far superior to its position in 1920, and consequently, the value of its shares greatly increased, by events and circumstances occurring after January 1, 1920. In 1919 its net earnings were $102,846.83. In 1927, they were $546,163.29. In 1919, the gross sales were $686,-501.79. In 1927 they were $1,775,023.73. It appears from the record that in 1919 the company spent for advertising $24,446.99, but in 1921, $108,920.94. In 1922 and 1923, advertising expense remained stationary, but in 1924 they advanced to over $200,000.00 and in 1925 were approximately $140,000.00. The complacency of the appellant is not disturbed by the facts, figures and circumstances which would lead the ordinary mind to conclude a great increase in value of LaFrance in 1928 as compared with 1920, because, as he says, the five year period ending December 31, 1919, were years of low earnings due to the difficulties of obtaining raw materials at reasonable prices owing to the war, and as has been stated, that by 1920 the ground work for success had been laid with every essential for reasonable expectation of increased profits existing. We do not agree. This contention is indifferent to factors coming into being after 1920 which may not be ignored, continued, intensive effort, enormously increased advertising, greater efficiency of methods, and above all economic conditions and trends. All that may be said properly is that potentialities existed in 1920, but the actualities depended upon the concurrence of other and later factors; and it may not be said fairly that intelligent and reasonable buyers and sellers would, on January 1, 1920, in their mercenary interests have agreed upon a valuation approximately equal to that arrived at in 1928. The transaction was made at a time when the country was at its peak of so-called prosperity. Money was plentiful. Reorganizations and mergers were fashionable, and grossly high prices were not

deterrents. The ever mounting price for property and securities during the period from 1920 to 1929, cannot be ignored in the fixation of values as of the beginning and the end of that period. The increase of earnings in 1929 cannot reasonably be attributed solely to its activities prior to January 1, 1920, but, on the contrary, such increase was caused by a combination of factors occurring thereafter, including the general economic trend of the years, resulting in a great enhancement of the value of the shares. The difficulty in obtaining raw materials undoubtedly lessened the company's profit for a short period, but not to such an extent as appreciably to modify the value of the shares as ascertained by the Commissioner. A purchaser on January 1, 1920, would probably have proceeded to arrive at the value of LaFrance shares on a basis similar to that adopted by Postum in 1928. He would have been influenced greatly by earnings; and a comparison of this nature is indicative of the fairness of the Commissioner's ruling. Postum paid for LaFrance approximately 12½ times its net earnings for 1927. Applying the same method of valuation in 1920, LaFrance shares would have been worth less than $1,300,-000.00, which is less than the Commissioner's valuation. Further, the increase in profit for 1927, is greater than five times the profit in 1919, and assuming that the worth of the company increased in like measure, it attained a valuation of 6½ millions or approximately the amount paid by Postum for LaFrance shares.

The appellant offers no other or fairer method of valuation except a suggestion that the Commissioner should have used the average net earnings of the company for the period of five years subsequent to January 1, 1920, in combination with the earnings of the period prior to that date as a basis of capitalization. As we have said, changed conditions were largely responsible for earnings subsequent to 1920, and those earnings would not fairly reflect the value of the company as of the statutory date.

■ The appellant's contention amounts to this, that he and his associates, at the height of the boom in 1928, were willing to sell LaFrance at a price not in excess of its fair market value in 1920, and this in despite of profits five times as great; or to state it in another way, on January 1, 1920, upon a reasonable basis of expectation, the value of the LaFrance shares was equal to the value obtained for them eight years later. The very statement of the taxable's contention supplies a sufficient answer. Admittedly, it is difficult to fix upon the fair value of shares of stock as of a given date by any set rule or formula, and it is true also that expectation of future increase in value reasonably entertained may not be ignored, yet that expectation must rest upon a substantial factual basis. The method adopted by the Commissioner was the capitalization of ascertained earning power. This method necessarily comprehends the sources from which the earnings flow and the methods and means by which the streams of revenue are caused to swell. Selling and distributing agencies, advertising, establishment of tradenames and trademarks are all factors which combine to produce revenue and earnings.

It is clear, we think, that some of the valuations of the taxable are arrived at by methods which result in reduplication of values, while other valuations are merely arbitrary.

■ Considering, therefore, all the circumstances as disclosed by the record, we are of the opinion that the appellant has not shown that the Commissioner's ruling was erroneous or unfair, and the decision of the Tax Board is sustained.

■ From what has been said, it follows that when on September 4, 1928, the exchange of shares was consummated the transaction was closed; and, the sale of 900 shares of Postum by appellant thereafter was a separate

and distinct transaction, which, resulting in gain, was properly taxable.

One other contention of the appellant needs to be noticed, that is, inasmuch as the Legislature in 1929, *Vol. 36, Laws of Del., c.* 8, defined the term "reorganization" and exempted from tax transaction similar to the one before us, the amendatory act must be regarded as a clarifying act and its exemption read into the act of 1921 and applied hereto. Without deciding whether under the facts of the instant case the transaction would be exempt under the act of 1929, it is sufficient to say that the act was not merely to clarify that which was doubtful under the act of 1921, but was, in fact, an amendatory act granting exemptions from taxation of transactions which before were taxable. Possibly, hardships which may have arisen under the act of 1921 may have influenced the Legislature to adopt the amendment of 1929. But we are compelled to apply the law as it existed when the taxable transaction occurred. Prior to 1929, the Legislature had adopted one policy, after that another policy. If the Legislature had intended the act of 1929 to be an act merely to clarify the act of 1921, it doubtless would have said so. Finding no error in the determination of the Tax Board, the appeal is dismissed.