PROTEST OF PENTECOST & HODGES, INC.

*98 P. 2d 606.*

No. 28676.   Jan. 23, 1940.

Roger L. Stephens and Ted Foster, both of Oklahoma City, for protestant.

C. D. Cund, A. L. Herr, and C. D. Stinchecum, for Oklahoma Tax Commission.

GIBSON, J. This is a proceeding to review an order of the Oklahoma Tax Commission assessing additional income tax against Pentecost & Hodges, Incorporated, for the years 1933 and 1934.

The appealing taxpayer was engaged in the business of drilling oil and gas wells. In the year 1932 it entered into four separate contracts with different producers whereby it agreed in each case to drill and complete a well for a stipulated consideration to be paid only out of the proceeds of a certain percentage of the oil as the same was produced. The total amount thus to be received by the taxpayer for its services was $810,-000.

All of these wells were completed in 1933 at a total cost of $191,250.56, and the taxpayer received in the aggregate during that year on its contract prices the sum of $114,149.13.

The receipts from the wells in 1934, together with the sum heretofore mentioned as received in 1933, returned to the taxpayer the sum of $178,111.15 in excess of the total cost of drilling.

The taxpayer, acting on the belief that there was no income to report for taxation until the entire sum expended in drilling the wells had been recovered, made its return for 1933 showing no gross income. Its 1934 return reflected the facts and circumstances above related.

The commission, however, proceeded upon the theory that the cost of the wells constituted capital investment in the business of producing oil and gas, and determined the tax for 1933 by treating the aforesaid receipts of that year as gross income, and permitting deductions only by way of depletion as applied to oil and gas development by the provisions of subdivision (g), sec. 9, ch. 195, S. L. 1933, and rules adopted by the commission pursuant thereto.

Said subdivision authorizes the commission to establish rules and regulations under which allowances may be made for depletion in oil and gas properties, such rules and regulations to be based upon the cost of the particular property including the cost of development not otherwise deducted. The deduction from gross income from oil and gas thus to be determined and allowed is in addition to the usual operating and administrative expenses ordinarily incurred in the conduct of the business, and operates to permit recovery of the cost of the property or, that is to say, the capital investment, which is to be deducted from the gross income. In lieu of such method the taxpayer at his option may deduct 20 per cent. of the gross income each year as an allowance for depletion in the manner provided by the statute. But the latter method has not entered into this case.

The method as put in operation by the commission for establishing the annual allowance for depletion in the ordinary case of oil production is to estimate the total potential production in

barrels from the particular premises and divide the sum of the cost of the property, the capital invested, by the number of barrels so estimated. The quotient thus obtained represents the initial cost to the taxpayer of each barrel produced during the tax year. The sum thereof is allowed as a deduction from his gross income for that year, thus returning to him a portion of his invested capital each year until all such capital is returned.

The foregoing method of computation has been approved by state and federal courts as a proper means of establishing the quantity of oil to be recovered, and is considered a reasonably stable basis of calculation of annual deductions for depletion. This is disputed by neither of the parties. But we are aware of no decision relating to oil income approving a deduction for depletion based upon the quotient of the cost, or invested capital, and the estimated value of the potential production. In such case quantity is considered reasonably susceptible of scientific calculation, but estimating the value thereof presents a more difficult task by reason of the obvious uncertainties to be encountered.

Here the commission undertook to estimate the total value of the oil payments to be received by the taxpayer under its contract on each well, took the cost of the well and divided it by a sum representing the total estimated return to the taxpayer from the well. The quotient thus obtained represented the unit or percentage of depletion each year to be taken from the value of the year's production as depletion.

The taxpayer charges that the method so employed amounts to mere speculation, is unscientific and inequitable, and beyond the powers of the commission as delegated by the statutes, and insists that the only accurate means available and to be employed in arriving at the taxable net income in such case is to permit recovery of initial cost and to consider the receipts thereafter as gross income. In other words, the contention is that in this particular case there can be no gross income to serve as a basis for determining the net income by the process of deducting allowable expense within the meaning of the statute until the invested capital is recovered. Burnet v. Logan, 283 U. S. 404, 75 L. Ed. 1143; Comm. of Int. Rev. v. Laird, 91 Fed. 2d (C. C. A.) 498.

In support of its action the commission cites J. K. Hughes Oil Co. v. Bass, 62 Fed. 2d (C. C. A.) 176; State, etc., Oil Co. v. Comm. of Int. Rev., 66 Fed. 2d (C. C. A.) 648, and a number of decisions of the Board of Tax Appeals of the United States. None of those decisions involves the character of circumstances presented in the instant case. In each of them the taxpayer either owned all the lease or an interest in the same for the full term thereof. Here the taxpayer owns no interest in the lease or the oil and gas rights in the land except the right to produce a revenue sufficient to compensate it for the services rendered under each contract. It is not engaged in the business of producing oil and gas. Neither has it purchased or contracted for an interest in oil and gas rights. Therefore, it has made no expenditure that may be considered as an increase in capital investment employed in the production of oil and gas or as an investment in oil and gas royalties. It is rendering a service for compensation upon a contingent basis.

Though the plan adopted by the commission in the instant case may border upon the accepted method of calculating annual allowables for depletion of capital invested in oil and gas properties, it yet remains unrecognized as a workable principle. It is especially unsuitable in this case. As stated above, the capital investment in each barrel of oil produced, that is, the initial cost thereof, may be determined by estimating the potential production in barrels and dividing the total capital investment by the number of barrels so estimated. The quotient is the cost of each barrel, and that cost per barrel is deducted from the value of the annual production and allowed as depletion, thus permitting a re-

covery or return of capital investment free from the income tax. But it does not follow that the potential recovery in value may be estimated and then substituted for potential quantity in the matter of determining the unit cost, or the capital investment in each barrel produced. It is true the oil industry has adopted a sort of method of estimating the market value of producing properties, but it is not founded upon a scientific basis of computation, and cannot suitably take the place of estimated quantity in the matter of calculating unit cost of production for the purpose of determining annual depletion allowance. Future value of oil is incapable of reasonably accurate estimation over a period of years, and should not be employed in the matter of estimating annual depletion. In the instant case the only safe method was to permit return of cost before attempting to assess the tax, for unit of cost could not be determined, thus leaving annual allowance for depletion incapable of fair calculation.

This conclusion is entirely in accord with the federal decisions on the same subject. Burnet v. Logan, supra; Commissioner v. Laird, supra; Rocky Mountain Dev. Co. v. Commissioner, 38 B. T. A. 1303. One who takes a contingent contract of this character does not acquire an economic interest in the oil and gas beneath the surface. That is, the drilling of the well does not result in the acquisition of a capital asset. Edwards Drilling Co. v. Commissioner, 35 B. T. A. 341 (affirmed, 95 Fed. 2d 719); Cook Drilling Co. v. Commissioner, 38 B. T. A. 291. We may say here that the case of Dearing v. Commissioner, 102 Fed. 2d 91, would appear contrary to the foregoing statement and the cited authorities, but that case is distinguished in the opinion of Cook Drilling Co. v. Commissioner, above, in the following language:

"In the instant case the owners of the oil and gas in place, the Sonbar Corporation and the Bussa Company, respectively, with whom petitioner entered into its drilling contracts, did not execute to petitioner an assignment of an interest in the oil and gas in place, as was the fact in Willis R. Dearing, supra, which case, for that reason, is distinguished from the instant case."

Here there was no assignment of any interest in the oil and gas in place. There being no capital asset, there can be no allowance for depletion. Therefore, a return of investment cannot be accomplished by annual allowances for depletion.

The only logical methods to be employed in such case for the determination of the net taxable gain is either to permit recoupment of capital invested under the contract before assessing a tax or to permit the taxpayer to treat the annual income arising from the contract as a regular business expense for the particular year. The matter is one of election on the part of the taxpayer. This is clearly to be gathered from the foregoing federal cases. Here the taxpayer demanded recoupment of capital, or expense, before assessment of returns. That is precisely what occurred in Burnet v. Logan and in the Laird Case, supra, and in Rocky Mountain Dev. Co. v. Commissioner.

In the latter case the following rule was announced:

"Where petitioner, in exchange for oil well equipment, acquired certain oil payment contracts for stipulated amounts to be paid out of the proceeds from oil if, as and when produced from the properties upon which the exchanged equipment was installed, and the petitioner's right to receive such future payments and thus recoup its cost and realize taxable profits, if any, was wholly contingent upon the indeterminable happening of future events, held, that petitioner is entitled to apply the payments actually received during the taxable year on each contract, respectively, in recoupment of the cost of such contract, respectively, and, further, is obligated to return as income only the excess of such payments over cost of each contract, respectively. Burnet v. Logan, 283 U. S. 404."

And in the Laird Case the Circuit Court of Appeals held that oil payments

made under a contract similar to the one in question as distinguished from royalty payments constituted returns of capital invested and not subject to income tax until the investment was returned. The last two cases cited apply the rule announced in Burnet v. Logan, supra. The facts in those cases and in the instant one are not to be distinguished.

Under the facts before us the taxpayer was subject to no income tax for the year 1933. This makes it unnecessary for us to consider the assignment relating to the limitation of time placed upon the commission with reference to the attempted assessment for that year (subd. (d), sec. 27, Act of 1933, supra).

The taxpayer also attempted to interpose the defense of time limitation to the assessment of 1934.

In its protest against the proposed assessment for that year it did not raise the question of the statutory limitation of time but at the close of the hearing it asked permission to amend so as to include such plea. The commission denied the request, and its action is assigned as error.

Subdivision (d) aforesaid and subdivision (e) of the same section provide in substance that the amount of tax levied by any provision of the act shall be assessed within two years after return is filed, except in cases where the return is false or fraudulent, and that without assessment no proceeding by tax warrant or in court shall be commenced after such period.

The 1934 return was filed June 15, 1935. On June 4, 1937, within the two-year period, the commission gave notice of a proposed additional assessment allegedly made necessary by reason of the disallowance of a certain deduction claimed for depletion as shown by the return. Then on June 25, 1937, subsequent to the two-year period aforesaid, and before the time for protesting the above-mentioned proposed assessment had expired, the commission notified the taxpayer that the same had been canceled and an increased assessment proposed. It was the protest against this latter assessment the taxpayer sought to amend by including the plea of the statutory bar of time.

The protestant bases its argument upon the theory that the commission had abandoned its proposed additional assessment commenced within the two-year period by adopting in its second proposal a wholly new plan or principle for determining the additional assessment. It is insisted that in view of this circumstance the proceeding to revise the 1934 return was not commenced within the time allowed, and the protestant should have been permitted to amend its protest in conformity with the proof by adding a plea of the statute of limitations.

Assuming that the commission by its second proposal did adopt a plan or method of assessment wholly unlike that pursued in the first proposal, both proposals related to the same income, and the last thereof can be considered in no other manner than a mere amendment of the first. The mere change in the process or plan of calculation cannot give to the last proposal the character of a new proceeding. Had the plea in bar been originally incorporated in the protest, the same could have availed the taxpayer nothing. Disallowance of the amendment was therefore not error.

No income tax should have been assessed for the year 1933. The assessment for 1934 was based upon an erroneous theory. The order appealed from is therefore reversed and the cause remanded to the commission, with directions to assess the tax for 1934 in accordance with the views herein expressed.

BAYLESS, C. J., and RILEY, CORN, HURST, and DAVISON, JJ., concur. WELCH, V. C. J., dissents. OSBORN and DANNER, JJ., absent.

---

WELCH, V. C. J. (dissenting). It is my view that the action of the Tax Commission was proper and merits affirming, following the decision of the Fifth

Circuit Court of Appeals in Dearing v. Commissioner, 102 Fed. 2d 91. That case is more nearly in precise point than any other decision cited, and is not distinguishable in any matter of material substance.