THE STATE OF MONTANA, EX REL. JOHN H. ANDERSON, JR. AND LEMUEL C. CRAGHOLM, AS EXECUTORS OF THE LAST WILL AND TESTAMENT OF JOHN H. ANDERSON, DECEASED, AND JOHN H. ANDERSON, JR., INDIVIDUALLY, RELATORS, v. THE STATE BOARD OF EQUALIZATION OF THE STATE OF MONTANA, AND ARCHIE E. SIMON, CAL A. ROBINSON, AND J. F. REID, AS MEMBERS OF SAID STATE BOARD OF EQUALIZATION, RESPONDENTS.

No. 9478.
Submitted May 20, 1957. Decided October 24, 1957.
Rehearing Denied December 31, 1957.
319 Pac. (2d) 221.

Mr. Lyman H. Bennett, Jr., Bozeman, for relators.

Mr. Arnold H. Olsen, former Atty. Gen., Mr. Forrest H. Anderson, Atty. Gen., Mr. William F. Crowley, Asst. Atty. Gen., Mr. H. O. Vralsted, Sp. Asst. Atty. Gen., Mr. Lyman J. Hall, Deputy Tax Counsel, Bd. of Equalization, Helena, for respondents.

Mr. Bennett and Mr. Vralsted argued orally.

MR. CHIEF JUSTICE HARRISON:

This is an appeal from a judgment of the District Court of Madison County, Montana, concerning income taxes of the respondents, John H. Anderson, Jr., and Lemuel C. Cragholm,

as executors of the last will and testament of John H. Anderson, deceased and John H. Anderson, Jr., individually. Hereafter we will refer to the appellants, the State Board of Equalization and members, as the Board. The facts are as follows:

John H. Anderson, Jr., filed his personal income tax returns with the State Board of Equalization on or before the 15th day of April, for each of the years 1947, 1948, 1949 and 1950. The returns were reached for examination by the Board in the orderly and regular course of business and the audit completed May 18, 1953. Examination purportedly showed that the taxpayer had incorrectly reported his net income for each of the above-mentioned years. On the above date the appellants assessed deficiency taxes and notified him thereof.

John H. Anderson, Sr., died January 6, 1950. He filed his income tax returns in proper time for the years 1947, 1948 and 1949, and his personal representatives prepared and filed a return for him for the period January 1 to January 6, 1950. Those returns were reached for examination by the Board in the orderly and regular course of business and the audit completed May 18, 1953. This examination also purportedly showed net income had been incorrectly reported for the years 1947 and 1948. On May 18, 1953, the Board assessed deficiency taxes and notified his personal representatives thereof.

With respect to the tax return for the period January 1 to date of decedent's death on January 6, 1950, the personal representatives failed to apply to decedent's closing inventory of personal property, the appraised value thereof as found and determined by the appraisers appointed by the District Court to make inventory and appraisement of decedent's property, as required by R.C.M. 1947, section 84-4905 ([Laws of 1947, chapter 167, section 1] before the 1955 amendment).

The Board pursuant to the above statute applied the appraised value to decedent's closing inventory, which resulted in a deficiency tax.

In addition thereto, decedent's personal representatives filed their income tax return on behalf of his estate for the period of

January 6 to December 31, 1950, and purportedly this report was also incorrect.

On or about July 13, 1953, John H. Anderson, Jr. and the personal representatives of John H. Anderson, Sr., deceased, filed with the Board their separate written applications for revision and resettlement of the income taxes for the years in question.

In the application for revision of the deficiency taxes assessed for the years 1947, 1948 and 1949 against John H. Anderson, Jr., his contention was that recomputation was barred by R.C.M. 1947, section 84-4920 ([Laws 1933, chapter 181, section 20] before the 1955 amendment). He also requested a rehearing on the assessment for the years 1947 through 1950.

With reference to the application of John H. Anderson, Sr., it was contended the deficiencies for the years 1947 and 1948 were barred by the provisions of section 84-4920; that time had elapsed for presenting claims against the estate under R.C.M. 1947, sections 91-2704 and 91-2711, and further that the original returns as filed were computed correctly.

At the hearing of respondents' protest the attorney for the estate of John H. Anderson, Sr., made the additional contention that the assessment, made under the provisions of section 84-4905, was invalid as taxing an item which was not income, and that the tax imposed by such section was arbitrary.

On January 18, 1954, the Board issued its order determining that the Board's assessments were correct. On February 15, 1954, the respondents made application to the district court for writ of certiorari under the provisions of R.C.M. 1947, section 84-4923 ([Laws 1933, chapter 181, section 23] before the 1955 amendment). On the same day the court directed an ''Order To Show Cause On Application For Writ Of Review'' to the Board, setting February 26, 1954, as the time in which the Board could show cause why the writ should not be issued. On February 26, the court caused to be issued the writ applied for.

On April 2, 1954, the Board filed a motion to quash which the court overruled. On the same day witnesses were sworn and

testified for the respective parties, which testimony added little to the above facts. The judgment of the trial court was to the effect that the Board had operated without jurisdiction in imposing the deficiency assessments on the respondents, and that the assessments were void and of no effect. From this judgment the Board has appealed.

The issues sought to be considered on this appeal can be grouped under the following headings:

(1)   Did R.C.M. 1947, section 84-4920 (before it was amended in 1955) constitute either a statute of limitations or a limitation of authority on the State Board of Equalization from examining, recomputing or reassessing deficiency taxes upon returns made three years or more before completion of the assessment?

(2)   Was R.C.M. 1947, section 84-4905 (before the 1955 amendment) constitutional?

(3)   Did R.C.M. 1947, sections 91-2704 and 91-2711, bar the Board from claiming any deficiencies against the estate of John H. Anderson, Sr.?

R.C.M. 1947, section 84-4920, read as follows when this litigation arose:

"If, in the opinion of the Board, any return of a taxpayer is in any essential respect incorrect, it may revise such return, or if any taxpayer fails to make return as herein required, the Board is authorized to make an estimate of the taxable income of such taxpayer from any information in its possession, and to audit and state an account according to such return or the estimate so made by it for the taxes, penalties and interest due the state from such taxpayer. *Except in the case of a wilfully false or fraudulent return with intent to evade the tax, the amount of tax due under any return shall be determined by the Board within three years after the return was made.* In the case of such wilfully false or fraudulent returns, the amount of tax due may be determined at any time after the return is filed and the tax may be collected at any time after it becomes due, and where no return has been filed, the tax may be assessed at any time." Emphasis supplied.

The italicized portion of the statute is the particular part upon which this controversy is centered.

It is a well-settled rule of construction in Montana that where ▮ a taxing statute is susceptible of two constructions and legislative intent is in doubt, such doubt should be resolved in favor of the taxpayer. Shubat v. Glacier County, 93 Mont. 160, 18 Pac. (2d) 614; Vennekolt v. Lutey, 96 Mont. 72, 28 Pac. (2d) 452; Mills v. State Board of Equalization, 97 Mont. 13, 33 Pac. (2d) 563; State ex rel. Whitlock v. State Board of Equalization, 100 Mont. 72, 45 Pac. (2d) 684.

There has been a distinction made between construing revenue ▮▮ statutes imposing a tax and construing those granting exemptions or deductions. State ex rel. Whitlock v. State Board of Equalization, supra. In the latter instance the construction is against the taxpayer and in favor of the taxing power. However in this case, since the legislature commanded a particular act to be done for the protection of the taxpayer, viz., assessment within three years, it falls within the scope of the aforementioned rule demanding construction in favor of the taxpayer. Commonwealth v. Allied Bldg. Credits, 385 Pa. 370, 123 A. (2d) 686, 691. With this rule of construction in mind we will attempt to ascertain the governing intent and purpose in section 84-4920.

Several other states have statutes similar to ours, therefore examination of cases construing those statutes will be helpful in arriving at the correct construction of our own.

New York has a statute similar to ours set out in McKinney's Consolidated Laws of New York Annotated, chapter 60, Book 59, part 2, Tax Law, section 373. The pertinent provisions are as follows:

"Except as hereinafter provided in this section, the amount of tax due under any return shall be determined by the tax commission within three years after the return was made * * *"

Further the same section provides that a false or fraudulent return may be examined at any time and a tax assessed there-

on. A brief comparison between our own section 84-4920 and the above statute illustrates the close similarity between the two.

New York courts have held that the above-quoted portions of their statute constitute a statute of limitations. Marx v. Goodrich, 286 App. Div. 913, 142 N.Y.S. (2d) 28, 30; Brown v. New York State Tax Com'n, 199 Misc. 349, 99 N.Y.S. (2d) 73, 78.

The Vermont court in Union Twist Drill Co. v. Harvey, 113 Vt. 493, 37 A. (2d) 389, 396, stated their statute, which provided that the commission could assess a tax within two years after the tax was due if no tax had been assessed on the income or part thereof of a taxpayer, was not merely directory, but stated a condition precedent to the legality of the tax and was intended for the security of the taxpayer. That court stated:

"With the proviso that the return shall not be fraudulent it is a limitation of the jurisdiction of the Commissioner, and, as in other instances a lack of jurisdiction over the subject matter, it is not subject to waiver."

In Fireman's Mutual Aid Ass'n v. Commonwealth, 166 Va. 34, 184 S.E. 189, 193, the Virginia court held that the following portions of their tax law were a period of limitation:

"If any person * * * shall have hitherto failed or shall hereafter fail for any tax year of the three tax years last past, to make a proper return of his * * * income, or to have the same assessed for taxation * * * the department of taxation, * * * shall ascertain the amount of such * * * income * * * which should have been assessed, and shall assess the taxes prescribed by law thereon for the year or years so omitted." Acts Va. 1932, chapter 225, section 418. See also Hunton v. Commonwealth, 166 Va. 229, 183 S.E. 873, 880.

The Wisconsin court in Schuette v. Wisconsin Tax Comm., 234 Wis. 574, 292 N.W. 9, held a statute which was similar to ours, and which used the following words, "assessments *may* be made if such assessments and corrections are made within four years after the close of the period covered by the income tax return," St. Wis. 1929, section 71.11(5), not to be a statute of

limitations but rather a limitation upon the power of the commission to impose, reassess or recompute a tax.

The same court in Wyenberg Shoe Mfg. Co. v. Kelley, 210 Wis. 638, 246 N.W. 418, 419, 247 N.W. 320, said:

"There is in the section quoted an intent to fix a time after which any proceeding amounting to an additional assessment shall not occur. Such statutes rest on sound policy, and are as essential to good administration of tax laws as they are to the security and peace of business and welfare of citizens generally."

Missouri, interpreting a statute similar to Wisconsin's, took the same view of their statute as did the Wisconsin court in State v. Rogers, 351 Mo. 321, 172 S.W. (2d) 940, 941. See also Protest of Pentecost & Hodges, 186 Okl. 390, 98 Pac. (2d) 606, 609, where by inference the Oklahoma court held a statute similar to ours to be a statutory limitation of time beyond which no assessment could be made.

The Arizona court in Magma Copper Co. v. Arizona State Tax Comm., 67 Ariz. 77, 191 Pac. (2d) 169, 172, held the following section to be a statute of limitations:

"Corrections or additional assessments of income *may* be made at any time within three [3] years after the close of the period covered by a report of income; provided, that if in any year no return is filed, income of any such year may be assessed when discovered." A.C.A. 1939, section 73-1536. Emphasis supplied. In its opinion the court states:

"Said section is, clearly, nothing more nor less than a statute of limitations, prohibiting the Commission from making corrections or additional assessments against taxpayers based on field investigations after three years from the close of the period covered by the report. Without such limitations there would never be a finality to the corrections or additional assessments of the Commission."

See also Langer v. Gray, 75 N.D. 1, 25 N.W. (2d) 89, wherein that court held a similar statute to be a limitation of authority on the commission.

The Board relies heavily upon the case of Anderson v. Secur-

ity Mills, 175 Tenn. 197, 133 S.W. (2d) 478, for the proposition that section 84-4920 is not a statute of limitations, nor any limitation at all upon the power of the Board, rather it was merely directory. While certain language in the Anderson case cited by the Board may support its contentions, it does not support the result they cite it for since the court held the statute in question constituted a statute of limitations.

The Board has not directed our attention to any cases which interpret a statute similar to ours as merely directory, but in fact the contrary is true. The only difference in cases construing statutes like ours is in deciding whether the statute constitutes a statute of limitations, or a limitation upon the authority and power of the tax commission or Board to reassess or recompute tax returns.

This distinction is clearly set out in 85 C.J.S. Taxation section 1104(2), page 819, Time for Assessment or Reassessment:

"The period within which an assessment of income tax must be made may be fixed by constitutional provision or statute, and the assessing authorities may or should impose such an assessment within the time limited by such provisions. Accordingly, where reassessments or additional assessments of income are authorized to be made within a specified number of years after the income was originally taxable, or a reassessment is permitted of income of any of a specified number of years preceding, the assessing officer or tax commission is without authority to reassess income for a prior year, or to make a reassessment after the length of time prescribed by the statute, as the case may be. *Some statutory provisions of this nature have been held to be not statutes of limitation in favor of the taxpayer, but merely restrictions on the assessing officers,* and so the time thereby prescribed may validly be enlarged or extended by subsequent enactment. Other statutes have been held, however, to be statutes of limitations." (Emphasis supplied.)

In examining the Montana statute in the light of the cases ██ and authorities cited herein this court is of the opinion that section 84-4920 did not constitute a statute of limitations,

but rather a limitation upon the authority of the Board to re-assess returns after the expiration of three years from the date the return is made. The language of section 84-4920 lends support to this result because it is not worded in the manner a statute of limitations is usually phrased. See R.C.M. 1947, sections 93-2601 to 93-2618. Where the statutes do not definitely state that the code provision is a statute of limitations, there is usually supplementary language to the effect that any action after the running of a certain period of time is thereafter barred.

It is well settled that administrative boards have only the authority which is expressly granted to them by the laws under which they are created. They have no common-law powers and can act only when empowered to do so. 73 C.J.S. Public Administrative Bodies & Procedure, section 59, pages 383-384; 42 Am. Jur., Public Administrative Law, section 26, pages 316-319, section 53, pages 358-360.

In 73 C.J.S. Public Administrative Bodies & Procedure section 59, pages 383-384, the following statement clearly illustrates the above rule:

"Administrative officers and agencies must pursue their authority and act within the scope of their powers. Their exercise of authority must be authorized by, and be in accordance with the requirements of, controlling provisions and principles of law. Such officers and agencies are bound by the terms of the statutes or regulations granting them their powers, and are required to act in accordance therewith and to keep within the limits of the powers and authority granted them. They are without power to act contrary to the provisions of the law or the clear legislative intendment, or to exceed the authority conferred on them by statute. They have no power to authorize or acquiesce in the doing of a thing unauthorized or forbidden by statute, and they may not violate a statutory mandate, even though acting within the general jurisdiction conferred on them by statute."

Montana has substantially recognized the same rule in Yellowstone Packing & Provision Co. v. Hays, 83 Mont. 1, 268 Pac.

555; In re Farrell, 36 Mont. 254, 92 Pac. 785; State ex rel. Dragstedt v. State Board of Education, 103 Mont. 336, 62 Pac. (2d) 330.

In section 84-4920 the words "may revise," "the Board is authorized," "shall be determined" and "may be determined" are all utilized in various portions of the statute to bestow certain powers upon the Board. The Board is expressly authorized to do certain acts, viz., examine, audit, and recompute tax returns. However, in granting these powers to the Board the legislature has seen fit to limit their exercise to three years from the date the return is made, unless the return is fraudulent, false, or no return at all is filed. The Board had no power or authority to recompute or reassess taxes after the expiration of three years because the legislature had not granted it that power. Had the legislature intended to grant the Board the capacity to reassess taxes at any time in the future it would have been a simple matter to omit the portions of section 84-4920 in question. However the legislature did not deem it fitting in granting the Board the authority to reassess taxes, to leave such authority unrestricted; therefore they expressly limited its exercise, except in certain instances, to the three-year period.

The next question raised on this appeal goes to the validity of R.C.M. 1947, section 84-4905 (before the 1955 amendment). The respondents, in their brief, expressly attack such section as being unconstitutional. In this connection this court emphasizes the fact that the question of the constitutionality or validity of section 84-4905 was not raised by respondents in their application for revision of the tax assessments, in their petition for writ of certiorari, or in the proceedings pursuant to the granting of the writ. Before this appeal was taken there was only one reference to the validity of the statute now under attack and that was at the hearing before the Board on August 10, 1953, wherein the respondents' attorney stated that the statute was invalid as being arbitrary and taxing something which did not constitute an item of income. No specific constitutional

ground was presented upon which the Board could have predicated the invalidity of section 84-4905.

The district court made no reference to the constitutionality of the statute, and from the appearance of the judgment and the record that issue was never presented to it for determination. The first time the statute was expressly attacked as unconstitutional was on this appeal.

One relying on the unconstitutionality of a statute should raise the question at the earliest opportunity, and it should appear affirmatively from the pleadings and the record that they have relied and continue to rely upon such a defense. Vague assertions that a statute is arbitrary are insufficient to sustain any constitutional arguments. The express constitutional provision violated should be clearly set out and the arguments relied upon concisely stated. Respondents in their brief, while asserting that section 84-4905 is unconstitutional because it violates section 1a, article XII, Constitution of Montana, still lack the specificity which this court usually demands in raising constitutional issues. For authority see Britt v. Cotter Butte Mines, 108 Mont. 174, 89 Pac. (2d) 266; 16 C.J.S. Contsitutional Law section 96, pages 331-332.

However, in view of the fact that the question has arisen in this case and both the respondents and the Board have set out their respective arguments in their briefs we feel the court should dispose of the question in order to prevent any future litigation with respect to it.

R.C.M. 1947, section 84-4905, read as follows when the present litigation arose:

"Whenever, in the opinion of the board, the use of inventories is necessary in order to determine clearly the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the board may prescribe, conforming as nearly as may be to the best accounting practice in the trade or business and most clearly reflecting the income, except that the final closing return of a decedent must be made on an inventory basis regardless of the method previously used in calculating net income.

The value of the closing inventory shall be the same as the value fixed for inheritance tax purposes regardless of the method previously used by the taxpayer in valuing his inventories, one (1) of the three (3) alternative methods provided for in [Section 84-4906] shall be used in changing from the cash to the inventory basis.''

Section 1a, article XII, Constitution of Montana, declares:

''The legislative assembly may levy and collect taxes upon incomes of persons, firms and corporations for the purpose of replacing property taxes. These income taxes may be graduated and progressive and shall be distributed to the public schools and to the state government.''

R.C.M. 1947, section 84-4907, [Laws 1953, chapter 111, section 1] before the 1955 amendment, defined gross income as follows:

''The term gross income;

'' (1)   Includes gains, profits and income derived from salaries, wages or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, business, commerce, sales or dealings in property whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, royalties, securities, or the transaction of any business carried on for gain or profit, and income derived from any source whatever.'' The statute then goes on to specifically exclude those items which are not included within the term ''gross income.''

The respondents claim that application of section 84-4905 is unconstitutional in that it taxes something which is not income. They cite in support of this contention the case of Eisner v. Macomber, 252 U.S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A.L.R. 1570, and Estate of Tom L. Burnett, 2. T.C. 897, 903. A brief review of these cases will be helpful in arriving at the correct result in this case.

Although Eisner v. Macomber, supra, when originally decided was felt to have been a complete definition of income, it later developed that such was not the case. In fact the later case of

Helvering v. Griffiths, 318 U.S. 371, 375, 63 S. Ct. 636, 87 L. Ed. 843, made the observation that the Eisner case should be limited to the type of income there involved. See also Helvering v. Bruun, 309 U.S. 461, 60 S. Ct. 631, 84 L. Ed. 864, and Koshland v. Helvering, 298 U.S. 441, 56 S. Ct. 767, 80 L. Ed. 1268.

In Commissioner v. Obear-Nester Glass Co., 7 Cir., 217 F. (2d) 56, 61, the court raised the question of what income was in the following manner:

"The question is: has he realized an economic gain, from whatever source, which leaves him better able to contribute to the support of his government?"

It has been said in regard to the existence of income that the controlling factor is what the taxpayer did, not what he intended to do, nor even what he declared by bookkeeping entries he had done. Lewis v. O'Malley, D.C., 49 F. Supp. 173, reversed on other grounds, 8 Cir., 140 F. (2d) 735.

In Helvering v. Bruun, supra, the court stated that while economic gain is not always taxable as income, realization of gain need not be cash derived from sale of assets and "gain" may occur as a result of exchange of property, payment of taxpayer's indebtedness, relief from liability, or other profit realized from completion of the transaction. The fact that gain is a portion of the value of property received by the taxpayer in the transaction does not negative the realization.

What the above review of authorities illustrates is the fact that the concept of "income" and what is "income" is much broader than it was under the doctrine of Eisner v. Macomber, supra. Since our statutory and constitutional provisions with respect to income and what constitutes income are substantially similar to the federal ones, we believe that those federal cases defining "income" and "gross income" may serve as guides in interpreting our own law.

In the case of Estate of Tom L. Burnett, supra, the tax court was faced with a factual situation similar to the instant case. In that case the commission had attempted to impose a tax on

decedent under the provisions of section 42 of the Revenue Act of 1938, 26 U.S.C.A. (I.R.C. 1939) section 42. The decedent had left a large number of cattle which had been inventoried at much less than their market value and the commission contended that income had accrued to the decedent under section 42, supra, because of the increased value of the cattle. The pertinent portions of section 42 are as follows:

"In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includable in respect of such period or a prior period." The argument of the commission was, of course, that the increased value of the cattle was accrued income.

The court held that the assessment did not come within the intent or purview of section 42. However in denying the commission's argument they made the following statement:

"It may be within the *power of Congress to include such property as accrued income in a decedent's gross income for the period ending with his death, but we do not think that it has manifested any intention to do so* in section 42 of the Revenue Act of 1938 which is applicable here." (Emphasis supplied.) What is apparent from the above quotation is that the court recognized the fact such income could have been taxed had Congress made an express provision for it, however they neglected to do so.

Neither the case of Estate of Tom Burnett, supra, or Eisner v. Macomber, supra, support respondents' argument because both are clearly distinguishable from the present case. In the instant case Montana had a statute which expressly authorized the taxing of something as income which could have been allowed to slip from the state's grasp by lack of legislation.

In Helvering v. Enright, 312 U.S. 636, 61 S. Ct. 777, 85 L. Ed. 1093, the Supreme Court of the United States held that a decedent who was a past partner of a law firm could be taxed under section 42, supra, for accrued income which was earned

but not yet received. In fact, unfinished work of the firm was held to be accrued income, even though the decedent had been on the cash receipts and disbursement basis. At page 644 of 312 U.S., at page 782 of 61 S. Ct., Mr. Justice Reed said:

"Accruals here are to be construed in furtherance of the intent of Congress to cover into income the assets of decedents, earned during their life and unreported as income, which on a cash return, would appear in the estate returns. Congress sought a fair reflection of income." Then in a footnote under this quotation the court made the following observation:

"It is immaterial that all possibility of escaping an income tax is not barred, as for *instance the increased value of asset items in an estate return.* [Citing statute.] * * * 'the entire field of proper legislation [need not] be covered by a single enactment'." Emphasis supplied.

From the above authorities it becomes apparent that the federal courts recognize the power to tax the increase in value of certain items, for example, inventories, but that Congress has refused to enact express legislation including it within the scope of the Internal Revenue Act.

If section 84-4905 were declared invalid and unconstitutional it would allow certain taxpayers to obtain a tax "windfall" or "bonanza." Section 84-4905 was enacted to cover such a possibility. The following example will suffice to illustrate this point.

If taxpayer A owned a cow worth $50 in 1947, and he reported his income on the flat price method of inventory, he would, for example, pay a $2 tax on the cow. In 1948 the cow increases in value to $100, in 1949 to $150, and in 1950 (the year of A's death) to $200. Without the provisions of section 84-4905, A would have paid a total tax of $2 on the cow. His heir would get the stepped up basis when he received the cow upon final distribution, thus leaving a gap of $150 which was left on tax. R.C.M. 1947, section 84-4933 ([Laws of 1935, chapter 148, section 1] before the 1955 amendment).

However in the case of taxpayer B who operated on inventory

cost market method of reporting his income, a tax of $2 would be paid each year that the cow increased in value by $50.

What is clearly illustrated by the above example is that one taxpayer pays his fair share of the income tax while the other wholly escapes taxation. Is it income in one instance and not in another? Clearly not! What the legislature was seeking in enacting section 84-4905 was tax equality—the method of achieving that equality in one instance was by applying the appraised value ($200) of the inventory of the estate, to the closing inventory of a decedent, thus picking up the gap that would exist without this special provision.

In many cases the courts, while recognizing that economic income and benefit (as defined in the foregoing part of this opinion) have been received, refuse to impose a tax because there appears to be lack of a taxable incident—that is a particular transaction upon which they can impose the tax, for example, a sale, exchange, salary, etc. Such was the case under the federal statute where a taxpayer who reported his income on the cash receipts and disbursements basis dies. Although he may have accrued income up to the date of his death no taxable incident had occurred upon which to impose the tax for the accrued income. Section 42, Revenue Act of 1938, was enacted to provide a solution to this problem by making the death rather than the actual receipt of income the taxable incident for such a taxpayer, Commissioner v. Obear-Nester Glass Co., supra, so that those items of income earned by such a taxpayer and not received could be taxed on an accrual basis rather than cash receipts.

Courts have also stated as their reason for refusing to impose a tax on mere increases in value that such an imposition of tax would make administration of the law impractical, for example, the difficulty of obtaining a fair appraisal of the property value. However neither of the above obstacles appear in the instant case. The taxable incident under section 84-4905 was the death of the taxpayer. The impracticalities of appraisal vanish because the fair market value is ascertained by three unbiased

appraisers appointed by the court to evaluate the property. These appraisers would have to be appointed regardless of the existence of section 84-4905. R.C.M. 1947, sections 91-2201 and 91-2202.

Nor can the argument be made that section 84-4905 taxes accretion in capital asset items. The instant tax was imposed on inventory, income producing items. The only reason the tax could be evaded in the examples as set out above would be for the taxpayer to die *without* application of the provisions of section 84-4905. If he lived and sold the inventory items, as would eventually happen in the ordinary course of events, he would pay the tax on the gain he made over the inventory value attributed to each item.

Why the gain should be taxed in one instance and escape tax in the other is beyond the comprehension of this court. Since the legislature had seen fit to enact a provision expressly covering the eventuality of the death of a taxpayer operating on a depressed inventory value of reporting income, this court can find no valid constitutional barrier to the imposition of the tax.

The hardship of applying section 84-4905 to the case of a taxpayer who reported his inventory on the flat price method was alleviated by the spreading provisions of R.C.M. 1947, section 84-4906.

The last question to warrant this court's attention is whether R.C.M. 1947, sections 91-2704 and 91-2711, apply to tax assessments of the state.

The pertinent portions of section 91-2704 provide: ''All claims arising upon contracts, whether the same be due, not due, or contingent, must be presented within the time limited in the notice, and any claim not so presented is barred forever * * *''

R.C.M. 1947, section 91-2711, provides: ''No holder of any claim against an estate shall maintain any action thereon, unless the claim is first presented to the executor or administrator, except in the following case: An action may be brought by any holder of a mortgage or lien to enforce the same against the

property of the estate subject thereto where all recourse against other property of the estate is expressly waived in the complaint.''

State v. Pahnish, 116 Mont. 340, 342, 151 Pac. (2d) 1001, was a case in which the decedent had been confined in the state insane asylum for nine years. The order of commitment stated that he should be confined at private expense. This court held that since the liability was imposed by statute rather than contractual obligation it was not barred by section 91-2704. It has been repeatedly held that a tax is a liability imposed by statute. Board of Com'rs of Custer County v. Story, 26 Mont. 517, 69 Pac. 56; Sanderson v. Bateman, 78 Mont. 235, 250, 253 Pac. 1100; State ex rel. Sparling v. Hitsman, 99 Mont. 521, 527, 44 Pac. (2d) 747; State ex rel. DuFresne v. Leslie, 100 Mont. 449, 457, 50 Pac. (2d) 959, 101 A.L.R. 1329.

Governed by the above authorities this court can arrive at only one result, that R.C.M. 1947, sections 91-2704 and 91-2711, do not operate in such a manner as to defeat the claims of the Board of Equalization against the estate for the deficiency taxes imposed.

In furtherance of the decision as set out above we concur with the district court and find that the Board exceeded its jurisdiction and authority as to the deficiencies assessed for the years 1947 and 1948 against John H. Anderson, Sr., and as to the deficiencies assessed against John H. Anderson, Jr., for the years 1947, 1948, and 1949.

As to the assessments for the years 1949 and 1950 in the case of John H. Anderson, Sr., the assessments against his estate for the year 1950, and the assessments against John H. Anderson, Jr., for the year 1950, the judgment of the district court is reversed since such assessments were within the Board's jurisdiction.

The case is remanded to the district court with direction to amend its judgment in conformity herewith.

MR. JUSTICES CASTLES, ANGSTMAN, and BOTTOMLY, concur.