499 P.2d 636 (1972)
ASPEN AIRWAYS, INC., a Colorado corporation, Plaintiff-Appellant,
v.
John H. HECKERS, Director of Revenue of the State of Colorado, Defendant-Appellee.
No. 71-348.
Colorado Court of Appeals, Div. I.
July 18, 1972.
*637 John F. Mueller, Denver, for plaintiff-appellant.
Duke W. Dunbar, Atty. Gen., Eugene C. Cavaliere, Asst. Atty. Gen., Denver, for defendant-appellee.
Not Selected for Official Publication.
SMITH, Judge.
At issue in this case is the question of whether a use tax assessment upon certain of plaintiff's aircraft is an unconstitutional burden upon interstate commerce.
Plaintiff Aspen Airways is a Colorado corporation engaged in commercial air transportation between Denver and Aspen, Colorado. Aspen holds a certificate of public convenience and necessity issued by the Public Utilities Commission of the State of Colorado. Aspen also operates pursuant to a certificate of public convenience and necessity issued by the Civil Aeronautics Board which authorizes Aspen to operate as a domestic air carrier in interstate commerce solely within the State of Colorado. The parties agreed that scheduled route service by Aspen within Colorado constituted use of its planes in interstate commerce.
The facts are not in dispute. Two airplanes are involved. On February 1, 1965, Aspen purchased a DC-3 airplane in Los Angeles, California. Modifications to the aircraft were performed in Dallas, Texas. The plane was delivered to plaintiff in Colorado and placed in service immediately upon receipt.
Aspen, on October 21, 1965, executed an agreement to lease a Fairchild F-27 aircraft from a Miami Florida corporation. This aircraft was modified for commercial use by the Florida firm and was flown to Colorado on or about November 20, 1965, and turned over to Aspen. Plaintiff placed the F-27 airplane in service within Colorado on January 3, 1966. Contained within the lease was a purchase option which plaintiff exercised on April 15, 1966, and, at that time, became the owner of the aircraft.
Defendant-Appellee, as Director of Revenue for the State of Colorado, assessed a use tax as provided by 1965 Perm.Supp., C.R.S.1963, 138-5-33(1), based upon the purchase price of the DC-3 aircraft and the lease payments relative to the F-27 aircraft. After plaintiff had exercised its purchase option on the F-27, the basis upon which the tax was imposed was changed by the Director, from the lease payments to the purchase price. Aspen thereafter filed a protest to both tax assessments, and a hearing was held before a hearing examiner of the Department of Revenue. The hearing examiner sustained the tax assessment, and plaintiff brought suit in the district court as authorized by 1965 Perm.Supp., C.R.S.1963, 138-9-4. The case was submitted to the court on written briefs. The court, finding that the hearing examiner's final determination was *638 supported by the evidence and the law, upheld the validity of the tax. We affirm.

I.
The Statute provides for a use tax to be imposed upon the privilege of storing, using or consuming in this state any article of tangible personal property purchased at retail. 1965 Perm.Supp., C.R.S. 1963, 138-5-33(1). The use tax is supplemental to the retail sales tax law of 1935, C.R.S.1963, 138-5-1 et seq., and is not applicable to property subject to the retail sales tax. C.R.S.1963, 138-5-34. Assessment of the use tax is integrated with the assessment of the retail sales tax on sales consummated within the State of Colorado, the amount of each tax being based upon the purchase price of the taxable property. Aspen's primary contention on appeal is that the use of the aircraft in question may not be taxed because of C.R.S.1963, 138-5-14(1) (d), which exempts from taxation all sales which the State of Colorado is prohibited from taxing under the constitution or laws of the United States or of the State of Colorado. Aspen argues that the imposition of the use tax as to these planes is in contravention of the commerce clause of the United States Constitution in that it discriminates against or constitutes an undue burden upon interstate commerce. U. S.Const. art. I, § 8, cl. 3.
It is conceded that both aircraft while they were in the process of being delivered to Colorado from outside the State were merchandise being transported in interstate commerce and were, therefore, not taxable by the State of Colorado. It is also conceded that, subsequent to their arrival in Colorado, the aircraft were placed in service in interstate commerce by Aspen, and thereafter, while used in interstate commerce, were exempt from taxation. See Panhandle Eastern Pipe Line Co. v. Calvert, 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed. 583. However, the taxable exemption of these aircraft as merchandise ceased on their arrival in Colorado, where, upon reaching their final destination, they became nothing more than goods owned and in possession of Aspen within Colorado. The aircraft subsequently did not re-enter interstate commerce until such time as Aspen placed them into operation flying Aspen's routes within Colorado.
The fact that Aspen is authorized to operate only within the State of Colorado makes it clear that Aspen could not place these aircraft in interstate commerce until they had been delivered to Colorado. There was, therefore, a time, however short, during which these aircraft had ceased to be goods shipped in interstate commerce and had not yet been placed in interstate commercial use. This moment was the "taxable moment" as defined by the United States Supreme Court in Southern Pacific Co. v. Gallagher, 306 U.S. 167, 59 S.Ct. 389, 83 L.Ed. 586. That case upheld the assessment of a use tax, similar to the one in question here, on equipment purchased outside of the state and brought into the state for use in maintaining an interstate railroad. The Court said:
"We think there was a taxable moment when the former [items of equipment] had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use retention and exercise of a right of ownership, respectivelywas effective. The interstate movement was complete. The interstate consumption had not yet begun."
In the present case, Aspen possessed and exercised the right to retain both aircraft in its possession and to control their disposition and use. Thus, Aspen exercised two rights of ownership within Colorado before using the aircraft in interstate commerce. Pacific Telephone and Telegraph Co. v. Gallagher, 306 U.S. 182, 59 S.Ct. 396, 83 L.Ed. 595. Since a "taxable moment" occurred within Colorado, we hold the assessment of the use tax valid. See Oklahoma Tax Commission v. Stanolind Pipe Line Co., 10 Cir., 113 F.2d 853; and Inter-State *639 Nurseries, Inc., v. Iowa Department of Revenue, 164 N.W.2d 858 (Iowa).

II.
Aspen further argues that the assessment against the F-27 aircraft, which was operated under a lease prior to its purchase, was invalid in that prior to exercise of the option it was operating in interstate commerce and continued to so operate through the time of actual transfer of title. Aspen contends, therefore, that between the lease period and purchase, there was no "taxable moment" or break in its use in interstate commerce.
It has been recognized that a function of an integrated use and sales tax is to remove any incentive for buyers to purchase out of state to avoid payment of the tax on intrastate sales. Nelson v. Sears, Roebuck & Co., 312 U.S. 359, 61 S.Ct. 586, 85 L.Ed. 888. C.R.S.1963, 138-5-2(17), provides that the lease of equipment which grants a
". . . right to continuous possession or use of any article of tangible personal property . . . and such transfer of possession would be taxable if outright sale were made, such lease or contract shall be considered the sale of such article and the tax shall be computed and paid by the vendor upon the rentals paid."
If, as Aspen argues, a purchase option lease could be used to avoid taxation where an outright purchase would have been taxable, then the lease option purchase would provide a simple, although technical, means of avoiding the use tax. The language of C.R.S.1963, 138-5-2(17), quoted above is addressed to this problem, and it is the obvious legislative policy behind this language that defeats Aspen's argument.
At the time of the arrival of the aircraft in Colorado and the exercise of dominion by Aspen, the use tax attached for that "taxable moment" as if an outright sale had been made. The subsequent transfer of ownership of the aircraft title, pursuant to the option agreement, did not change the date at which time the tax could be assessed or the "taxable moment", but instead changed the basis of assessment from the rental payments to the purchase price. The date of the attachment of the use tax relates back to the date of initial entry of the aircraft into Colorado and to that moment when there was a break between transportation of the aircraft as merchandise in interstate commerce and the utilization of the aircraft as a vehicle for transporting goods or people in interstate commerce.
We affirm.
SILVERSTEIN, C.J., and DWYER, J., concur.