In the Matter of the Protest of WOODS CORPORATION to the Assessment of use tax upon purchase of Swearingen Airplane N449WC.

No. 47048.

Supreme Court of Oklahoma.

Feb. 11, 1975.

Lester D. Hoyt, Albert D. Lynn, E. J. Armstrong, Oklahoma City, for appellee Okl. Tax Commission.

Michael L. Smith, Oklahoma City, for appellant Woods Corp.

BERRY, Justice:

The issues presented herein concerns correctness of Tax Commission's assessment of use tax upon airplane owned by Woods Corporation [Woods].

68 O.S.1971 § 1402 provides in part:

"There is hereby levied and there shall be paid by every person storing, using or otherwise consuming, within this State, tangible personal property purchased or brought into this State, an excise tax on the storage, use or other consumption in this State of such property at the rate of two per cent (2%) of the purchase price of such property * * *"

Section 1401 (i) provides:

"The term 'use' means and includes the exercise of any right or power over tangible personal property incident to the ownership or possession of that property, except that it shall not include the sale of that property in the regular course of business."

Section 1404(c) provides an exemption to use tax where sale or use of the property has already been subjected to tax under laws of this State or some other state.

Woods is a Delaware corporation qualified to do business in Oklahoma and has its principal office in Oklahoma. It is a holding company, and through its subsidiaries, engages in business as a common carrier of automobiles in 21 states; oil and gas operations in 7 states and three foreign countries; metal building manufacturing in Oklahoma and Georgia; aerospace component manufacturing in Kansas; and sales operations in the United States and foreign countries.

In July, 1969, Woods purchased the airplane from California seller for about $430,000. The airplane was delivered to Woods in Billings, Montana. It was then flown to Wiley Post Airport, Bethany, Oklahoma, where additional equipment was installed.

Woods paid no sales or use tax on purchase of the airplane to Oklahoma or any other state.

The airplane has subsequently been based at Wiley Post Airport and used extensively to transport Woods' employees to other states for business purposes.

Through April, 1970, the airplane had made 10 test flights, 5 intrastate flights, and 103 interstate flights. Excluding test flights, 97% of flying time involved interstate flights.

The airplane has been assessed for ad valorem taxation in Oklahoma County as personal property of Woods.

On May 22, 1970, the Commission, acting pursuant to 68 O.S.1971 § 221, made a proposed assessment against Woods for $8,599.98 use tax, $687.99 interest, and $860 penalty.

On June 19, 1970, Woods filed a protest to the proposed assessment in the manner provided by § 221, supra.

On June 26, 1970, the Commission acknowledged receipt of the protest and advised the matter had been assigned to its legal department.

The record reflects no further action until September 11, 1973, when the Commission notified Woods hearing was scheduled for September 28, 1973.

The hearing was held and on November 1, 1973, the Commission entered an order denying the protest. Woods then brought this appeal.

Woods first contends the airplane was continuously used by it as an instrumentality of interstate commerce. It therefore contends Art. I § 8, Cl. 3, U.S.Const. [the Commerce Clause] prohibits the State from imposing a tax upon such use.

In Southern Pacific Company v. Gallagher, 306 U.S. 167, 59 S.Ct. 389, 83 L.Ed 586, the U. S. Supreme Court considered the right of a state to impose a use tax upon goods shipped in interstate commerce and then consumed in interstate transportation facilities.

The railroad company purchased certain items in other states, shipped them to California, and immediately installed some of them on interstate railway facilities. In considering applicability of California's use tax to items installed immediately upon arrival in California the court stated:

"* * * If articles so handled are deemed to have reached the end of their interstate transit upon 'use or storage,' no further inquiry is necessary as to the rest of the articles which are subjected to a retention, by comparison, farther removed from interstate commerce. We think there was a taxable moment when the former had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use—retention and exercise of a right of ownership, respectively—was effective. The interstate movement was complete. The interstate consumption had not begun * * * 'Practical continuity' does not always make an act a part of interstate commerce. * * * Here, under our analysis, we find only intrastate events taxed."

In Vector Company, Inc. v. Benson, Tenn., 491 S.W.2d 612, a Tennessee corporation, which was qualified to do business as a foreign corporation in numerous other states, acquired aircraft and brought them to Tennessee. It used the aircraft in conducting its real estate development business in Tennessee and other states and territories. No sales or use tax was paid any other state on the aircraft. When not in use the aircraft were tied down at a Tennessee airport or at airports where they came to rest following journeys. Most flights were interstate flights. The aircraft were taxed as personalty in Knox County, Tennessee.

The Tennessee use tax statute defined use to be the exercise of any right or power over tangible personal property incident to the ownership thereof, except sale at retail.

The court held personal property is presumed to have the domicile of its owner in absence of a showing of permanent situs elsewhere, and held the aircraft had come

to rest in the state and were subject to taxation.

Vector contended the aircraft were not taxable because at the time it brought them into the state it intended to use them in interstate commerce. The court stated this contention was untenable citing cases holding there was a taxable moment between the time the interstate shipment to Tennessee was completed and the time interstate consumption began.

In Aspen Airways, Inc. v. Heckers, Colo.App., 499 P.2d 636, Aspen was a Colorado corporation engaged in commercial air transportation between Denver and Aspen, Colorado. The parties agreed the service by Aspen within Colorado constituted interstate commerce.

Aspen purchased one airplane in California, modifications were performed on the aircraft in Dallas, Texas, and the airplane was then delivered to Aspen in Colorado and placed in service immediately upon receipt.

The court upheld the assessment of the Colorado use tax against this airplane. In so doing the court noted Aspen was only authorized to operate in the State of Colorado and therefore Aspen could not have placed the aircraft in interstate commerce until after its delivery to Colorado. The court found a taxable moment existed between the time delivery to Colorado ceased and the time Aspen commenced using the aircraft in interstate commerce.

In Flying Tiger Line v. State Board of Equalization, 157 Cal.App.2d 85, 320 P.2d 552, the airline purchased aircraft from the United States Government. The airline was authorized to engage in interstate transportation and intrastate transportation within California. The airline received airplanes in Georgia, flew them to California, retained them in California for a time, and then placed them in commercial service. The airline contended the California use tax was not applicable because the airplanes carried a pay load when they first came into the state and were instrumentalities of interstate commerce when they arrived in California.

The court held there was sufficient evidence to support the trial court's finding the aircraft did not carry a pay load when first flown into California, but were flown there for the purpose of delivering the aircraft to the airline's home base in Long Beach, California.

The court then held with reference to these airplanes:

"* * * we hold that in the instant case * * * there was a taxable moment intermediate the time the aircraft arrived at their home base * * * and the time of first commercial use. The planes were held at the home base for a period of time before that first commercial use. Although the evidence does not disclose how long the period of detention and use was, yet as indicated in the cases we referred to no particular length of time is required to constitute a taxable moment. * * *"

In the present case there is no evidence to indicate the flight from Montana to Oklahoma was for any purpose other than delivery of the aircraft to Woods' home office. Therefore, we conclude the airplane did not become an instrumentality of interstate commerce prior to its delivery to Bethany, Oklahoma. Flying Tiger Line v. State Board of Equalization, supra. There was a period time, however short, between the time delivery to Oklahoma was completed and interstate consumption began. Vector Company, Inc. v. Benson, supra; Aspen Airways, Inc. v. Heckers, supra; Southern Pacific Company v. Gallagher, supra. At that moment the use tax was effective and such constituted a tax on intrastate events, i. e. the exercise within the State of Oklahoma of rights incident to ownership and possession of the airplane. Southern Pacific Company v. Gallagher, supra.

We further conclude cases relied upon by Woods are distinguishable.

In W. R. Grace & Company v. Comptroller, 255 Md. 550, 258 A.2d 740, the

court held two aircraft purchased by the taxpayer were not subject to Maryland's use tax. One of the aircraft had flown to numerous other states on business prior to arrival in the taxing state. The court apparently held the aircraft became instrumentalities of interstate commerce prior to arrival in the taxing state.

Union Pac. R. Co. v. Utah State Tax Commission, 110 Utah 99, 169 P.2d 804, and Consolidated Coal Co. v. Porterfield, Ohio, 25 Ohio St.2d 154, 267 N.E.2d 304, involved railway cars and engines which had become instrumentalities of interstate commerce prior to arrival in the taxing state.

In Michigan-Wisconsin Pipeline Co. v. Calvert, 347 U.S. 157, 74 S.Ct. 396, 98 L. Ed. 583, a tax was held invalid on the ground it taxed gas which was moving in interstate commerce. In Helson & Randolph v. Kentucky, 279 U.S. 245, 49 S.Ct. 279, 73 L.Ed. 683, a tax was held to be invalid because it taxed the consumption of fuel during interstate commerce.

In the present case the airplane was not an instrumentality of interstate commerce when it arrived in Oklahoma and a taxable moment occurred between the time of delivery to Oklahoma and the time Woods commenced using the aircraft in interstate commerce.

We conclude Art. I, § 8, Cl. 3, U.S. Const. does not prohibit the state from assessing a use tax in these circumstances.

■ Woods next contends the Oklahoma use tax statute denies equal protection of the laws in violation of the U.S. Constitution and Art. X, § 5, Okla.Const.

In this regard Woods cites 68 O.S.1971 § 1404(g), which provides the following exemption from use tax:

"(g) in respect to the use of any article of tangible personal property used or to be used by *commercial airlines* and railroads." [emphasis added]

Woods contends classifications for tax purposes must "rest upon some ground of difference having a fair and substantial re-

lation to the object of the legislation." Allied Stores of Ohio v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480.

It contends no ground of difference is shown for applying use tax to aircraft purchased by it and allowing an exemption for aircraft purchased by "commercial airlines."

The term "commercial airlines" is not defined in the statute and we find no cases defining the term.

Commercial has been defined as "* * * having profit as the primary aim" and airline has been defined as "an established system of aerial transportation, its equipment, or the organization owning or operating it." Webster's Third New International Dictionary.

Therefore, we construe the term "commercial airlines" to mean "airlines which carry passengers and or property for hire."

In Commonwealth v. Lafferty, 426 Pa. 541, 233 A.2d 256, the court considered a use tax exemption granted to trucking firms qualified as common carriers but not to trucking firms performing almost identical operations which were not common carriers. The court held the statute did not violate the uniformity clause of the state constitution or the equal protection clause of the United States Constitution. In so doing the court stated it was reasonable to grant the exemption to public utilities in that such would benefit customers of the public utilities.

Likewise we conclude the exemption for commercial airlines can be justified in that the legislature may have intended to benefit consumers who use such airlines and encourage development of airlines which provide transportation services to citizens of this State.

■ Woods next contends the assessment should be barred due to the fact no final assessment was made within three years of the filing of its protest.

68 O.S.1971 § 223(a), provides no assessment of any tax shall be made after expiration of three years from the date the re-

turn was required to be filed, or was filed, whichever is later, and no proceedings by tax warrant or in court without previous assessment for the collection of such tax shall be begun after expiration of such period.

Section 223(c), supra, provides in case of failure to file a return as required by law the Commission is authorized to compute, determine and assess the estimated amount of tax due from any information in its possession, or "a proceeding in Court may be begun for collection of such tax without assessment at any time."

Woods contends filing of its protest on June 23, 1970, was equivalent to filing a return and the claim is barred because the Commission did not enter an order denying the protest within three years.

The Commission made its proposed assessment within one year after the airplane was brought into Oklahoma. In construing a similar statute we have held the filing of the proposed assessment tolls the statute of limitations. Protest of Pentecost v. Hodges, 186 Okl. 390, 98 P.2d 606.

We conclude this contention is without merit.

At the hearing Woods requested a remission of penalty and interest pursuant to 68 O.S.1971 § 220, on the ground Woods was mistaken on the law subjecting it to the tax. The Commission made no explicit ruling upon this request.

On appeal the Commission states that 68 O.S.1971 § 220, authorizes the waiver of interest in certain instances, that appellant requested "such additional interest" be waived, and the Commission would have no objection to such waiver.

■ In light of the fact Woods' failure to pay the tax resulted from a mistake of law, and the unexplained delay between filing of the protest and its denial, we conclude Woods' should not be burdened with the penalty and interest assessed against them by the Commission's order. Rogers v. Oklahoma Tax Commission, Okl., 466 P.2d 650.

The Commission's order denying Woods' protest to the proposed assessment is affirmed upon condition the Commission remit all sums of penalty and interest assessed against Woods on the use tax here involved, within 10 days after this opinion becomes final. It is so ordered.

WILLIAMS, C. J., and DAVISON, IRWIN, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.

HODGES, J., dissents.