JUSTICE McDONOUGH,
respectfully dissenting:
The general oil and gas net proceeds tax, which is involved here, is in lieu of a year-to-year ad valorem property tax on the oil and gas *318 in the ground. The actual tax is arrived at by applying the applicable local millage against 100% of the net proceeds value of the produced oil and gas. The specific sections involved were an exception to the application of the general net proceeds tax and provided that net proceeds for new production would be considered as the equivalent of the gross sale proceeds, and, instead of applying the local millage rate to the net proceeds value, however defined, levied a straight seven percent tax against the gross sale proceeds. See § 15-23-607, MCA (1985). The taxation of “new production” is an exception to the general law taxing net proceeds of oil and gas. See the first sentences of § 15-23-602 and 603, MCA (1985).
The statute at issue, § 15-23-601, MCA (1985), reads as follows:
“(2) The term ‘new production’ means the production of natural gas, petroleum, or other crude or mineral oil from any lease that has not produced natural gas, petroleum, or other crude or mineral oil during the 5 years immediately preceding the first month of qualified new production.” (Emphasis added.)
Webster’s Seventh New Collegiate Dictionary, p. 480 states:
“lease \’les\n 1: a contract by which one conveys real estate for a term of years or at will usu. for a specified rent; also: the act of such conveyance or the term for which it is made 2: a piece of land or property that is leased.”
We have previously said that when a taxing statute is susceptible to two constructions and legislative intent is in doubt, relative to exemptions and deductions, the construction is to be against the taxpayer and in favor of the taxing power. See, State ex rel. Anderson v. State Board of Equalization (1957), 133 Mont. 8, 13, 319 P.2d 221; Anaconda Co. v. Dept. of Revenue (1978), 178 Mont. 254, 258, 583 P.2d 421, citing Anderson.
I realize that we are dealing with an exception and not a deduction or an exemption, but it is, in essence, the same because it is a net reduction of the general net proceeds tax. The maxim: “Where the reason is the same, the rule should be the same,” applies here. See § 1-3-202, MCA.
If there is a doubt as to legislative intent then this being an exception, such words should be construed against the taxpayer. Specifically, what is not clear is the meaning of the word “lease” if one looks at it in isolation but when used in the context of “production of natural gas, petroleum, or other crude or mineral oil from any lease,” it becomes clear. The word “from” refers to the source. Oil and gas are produced from a place, real property and premises. For an example, *319 the oil and gas leases involved herein and agreements of the lessees herein, provide in their text for oil and gas produced and saved from the premises. Oil and gas are not produced from a written instrument or lease; if it were to be from a written lease, it would be production under or by virtue of a lease.
The effect of the majority’s construction is to give tax reductions on new production to those who have multiple written leases with production coming from the same place. For example, if minerals in the ground in a piece of land are owned by ten different owners as co-tenants, each gives a different written lease to a lessee or even the same lessee, such lessees then complete nine different additional development wells for each written lease adjacent to a producing well from the same vertical formation and pool. The nine wells would have the advantage of the tax reduction. However, a lessee who has one written lease covering two pieces of land, with a well on each, one five miles away from the other on an entirely different geological structure, would not receive the tax reduction, even though the second well would be geologically considered new production and the second well would be an expensive exploratory wildcat well and would open up a new field. Rules of construction and logic support the reversal of the District Corut.
CHIEF JUSTICE TURNAGE concurs in the dissent of JUSTICE McDonough.